US District Court
District of Columbia (Washington, DC)

Nursat I. Aygen
2705 S.9th St. Apt. 31-B
Arlington, Va. 22204
(703)920-1150,
    Plaintiff (Pro Se)

v.                          Case 1:05-cv-2469   C. KrK

District of Columbia Public Schools
825 N. Capital Street, NE
Washington, DC 20002,
    Defendant.

## MOTION TO REOPEN

When I (the plaintiff) turned in the required summons to this court in order to be able to serve the defendant District of Columbia Public Schools (DCPS), the summons was returned to me along with another document which indicated the "need to do a Motion to reopen."

I hereby file the Motion to reopen and petition the court for permission to serve the defendant and go forward with this most important case which goes to the core of our fundamental values and liberties. The defendants' underlying actions are so egregious that they transgress even the bounds of discrimination, and have caused great hardship to me and to my students and to the Visiting Instructor Service (VIS). The VIS is the department of DCPS that services the most vulnerable of students -- those who are unable to go to school due to medical reasons and are trying to keep up with their academics.

There will be no injury and no prejudice to the defendant if the case is reopened, as explained further below. The summons will not come as a surprise, since this complaint has already gone through EEOC and, before the EEOC complaint, I filed a complaint with DCPS (the defendant refused to investigate at that time.) Since the filing of the original complaint, the defendant has continued in its unlawful practices of discrimination, *i.e.*, refusing to place me in a teaching position which became available due to a retirement on June 30, 2005. Instead of filing a new complaint, I ask the court that I be allowed to go forward with this case. Additionally, please note that I have been pro se all along and I have expended considerable time and money to keep this case alive. I ask for favorable consideration.

## BACKGROUND

Against the wishes of the defendant and the Washington Teachers' Union (WTU), I was miraculously back on my job in mid-January 2006. Another VIS teacher, Mr. James

RECEIVED

AUG - 4 2006

NANCY MAYER WHITTINGTON, CLERK
   U.S. DISTRICT COURT

Roane, retired in June 2005, and DCPS refused to place me in the vacant position. The Department refused, despite its legal obligation, and despite its promise to me in 2003, when it illegally ousted me from my permanent position. (The Department was apparently unable to abolish Mr. Roane's position because of the long list of sick children waiting for a high-school visiting teacher.)

When I found out about the vacancy, I got in touch with both DCPS and WTU and I was flatly and unlawfully, and without basis, denied reinstatement. Instead of reinstating me, DCPS chose to advertise the position and opened the position to competition from other DCPS teachers and those outside the system, totally disregarding the long list of sick children sitting home, waiting for a teacher. (There were brilliant students apparently having to repeat a grade because they were denied a teacher. There was one child at the top of her class at the premier high-school of DC who not only lost her outstanding ranking but whose graduation was in jeopardy until she was assigned to me, literally weeks away from graduation this past spring. There were children in the projects such as Barry Farms , a child whose is a talented writer working on her first novel who is going to have to repeat 9th grade. The list of children injured for lack of a VIS teacher they are entitled to goes on and on)

I interviewed with about two dozen other candidates for my old job with my former supervisor, who had nothing to do with my illegal ouster and who, along with our divisional assistant superintendent, vigorously opposed my illegal termination to no avail. After the interview with my former supervisor, I had to wait for a long time as the defendant sat on my supervisor's recommendation. However, the defendant was unable to overrule my supervisor's recommendation that I was the best candidate and that I be hired.

When I came back mid January 2006 after a hiatus of three years to new textbooks and standards, I immediately got an overflowing case load of students who had been on a waiting list for a secondary teacher for very long periods of time. I had 20 secondary students in one semester whereas the other secondary teacher (yes, with my return there were only two secondary visiting teachers to serve all the students in the nation's capitol) who also has had a full load, had 17 students in *two* semesters.

My priority has always been my students: with me, "children are first" is not an empty slogan, it is the truth. Since the defendant says, "children first," the fact that serving the children was a priority for me over serving the defendant in this civil action, at a very busy time at the end of an unusually busy semester, when children's lives literally hung in the balance, cannot be injurious to the defendant. There is no injury to the defendant as to the date of service. Egregious injury has been committed by the defendant against the children, against this teacher and against the values of this mighty nation.

Additionally, the refusal of DCPS to place me in a vacant position, as required by law, is continuing the original act of discrimination. I feel that, instead of filing a new complaint against the defendant, the original action should be allowed to proceed. This seems to be the most expeditious use of public resources.

2

As I had indicated in earlier pleadings, the Office of Employee Appeals (OEA) came down with a judgment in April 2005 ordering my reinstatement, back pay and benefits. Instead of honoring the decision and putting me back to work to serve children waiting for a visiting teacher on the long waiting list, the defendant chose to hire very expensive law firm to oppose this judgment. The defendant appears to be further subverting the justice system: my case was on Board's docket for a final OEA decision on October 2005, but it was taken off the docket seemingly indefinitely.

If I can get past the technical issues such as the issue presented here, I am confident that I will prevail, and justice will be served.

On a personal note, if am awarded the maximum amount allowed under the law, this will still be only a fraction of the current cost of a home which I was in the process of looking to purchase when I was dismissed on Valentine's Day 2003. (Because of the dismissal and all the ugliness and trauma that ensued, my mother, who had been super healthy all her life, started to decline, also adding to the demands of my time and energies in addition to my commitment to my students. So this case is a humanitarian disaster in addition to being an open affront to our cherished values, not only from the point of view of my students, but also my family.)

This case will also indicate if the government can apply what has been called the employment law death penalty, *i.e.* termination, with impunity. I hope this case will show that it is still possible for a Muslim to get justice in the face of egregious abuse of power.

I strongly urge that I be allowed to serve the defendant and continue with this case.

Sincerely,

*[signature]*

Nursat I. Aygen
2705 S. 9th Street. Apt. 31-B
Arlington, VA   22204-2332
August 4, 2006